A. Jordan Rushie, PA Bar #209066
Mulvihill & Rushie LLC
2424 East York Street, Suite 316
Philadelphia, PA 19125
215-385-5291
Jordan@FishtownLaw.com

Marc J. Randazza, (*pro hac vice* pending, licensed in AZ, CA, FL, MA, NV)
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
702-757-1001
305-437-7662 (fax)
rlgall@randazza.com

Attorneys for Defendant,
John Doe # 13

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Malibu Media, LLC, | ) | Case No.: 12-cv-02088-MBB |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF MOTION TO DISMISS PLAINTIFF'S** |
| | ) | **AMENDED COMPLAINT UNDER FED. R.** |
| vs. | ) | **CIV. P. 12(b)(1) AND 12 (b)(7) AND** |
| | ) | **MOTION TO STRIKE PARAGRAPH 53 OF** |
| John Does 1-22, | ) | **PLAINTIFF'S AMENDED COMPLAINT** |
| | ) | **UNDER FED. R. CIV. P. 12(f)** |
| Defendants. | ) | |
| | ) | |

## I.    Introduction

Malibu Media, LLC came into existence on February 8, 2011.  Almost immediately thereafter, it filed a tsunami of lawsuits alleging infringement of copyrighted works that it did not create.  These suits accuse thousands of "John Doe" defendants of downloading materials

1

through the use of bit torrent technology ("BitTorrent")[1]. In this district alone, Malibu filed 44 separate actions against hundreds of John Doe defendants. Five of Malibu's lawsuits were filed in this district on the very day that Malibu Media, LLC came into existence[2].  However, it appears that many, if not all, of these cases were built upon a stack of falsehoods.

Malibu's practice is to file what are essentially reverse class action lawsuits naming dozens of "John Doe" defendants and alleging that the defendants were acting in interdependent unison as part of a "swarm."  The "swarm theory" relies on the principle that dozens and even hundreds of people acted in interdependent unison to distribute and infringe on a copyrighted work through the BitTorrent protocol.[3]

Because Malibu does not know the true identities of its alleged infringers when it files suit, it can only identify its potential defendants by their Internet Protocol, or "IP", addresses allegedly observed sharing the copyrighted works through BitTorrent.  Malibu harvests these IP addresses using automated software that, according to Plaintiff "scans the entire Internet for all BitTorrent infringement." (Malibu's Reply to Doe #6's Motion for Sanctions). In sum, Plaintiff claims to monitor the entire Internet through a third party vendor -- IPP Limited, reviewing a mind-numbing volume of online transactions and exchanges of information, and then somehow culling out those online interactions that it believes violate its copyrights.[4]

---

[1]     As of October 9, 2012, Malibu has Malibu has instigated 349 mass lawsuits all over the country. Since then, it filed even more in other states. Indeed, Malibu filed two new suits in New Jersey on November 7, 2012. See *Malibu Media v. John Does 1-12*, 3:2012-cv-06948 and *Malibu Media v. Does 1-19*, 3:2012-cv-06945.  Almost every copyright case filed in the District of New Jersey this year is a "John Doe" BitTorrent case.  However, since this Honorable Court set a bellwether trial, not one BitTorrent case has been filed in the Eastern District of Pennsylvania.

[2]     See *Malibu Media, LLC v. John Does 1-15*, 2:12-cv-00664-CMR, *Malibu Media, LLC v. John Does 1-17*, 2:12-cv-00665-CDJ; *Malibu Media, LLC v. John Does 1-10*, 2:12-cv00666-TJS, *Malibu Media, LLC v. Does 1-11*, 2:12-cv-00667-MAM, *Malibu Media, LLC v. John Does 1-22*, 2:12-cv-0068-JCJ.

[3]     The Plaintiff agrees that this "swarm theory" is a correct legal theory.  The very nature of BitTorrent file sharing necessitates the use of this theory when pursuing these kinds of cases.

[4]     In exchange, IPP Limited is, on information and belief, is a stakeholder in these actions – collecting a percentage of each settlement or judgment.

Despite its national campaign, Malibu has never taken a case to trial, nor have its members or officers been subject to a 30(b)(6) deposition. In fact, any time such an event seems likely, Malibu cuts and runs. Accordingly, on October 3, 2012, this Honorable Court ordered a "bellwether trial" to test the sufficiency of Malibu's claims. Instead of proceeding with its claims, Malibu took steps to evade the intent of the Court's Order. On November 2, 2012, Malibu filed an Amended Complaint against just three of the original twenty-two Does, now alleging that they downloaded a slew of other copyrighted works[5] not at issue in the initial Complaint. The Amended Complaint is not even close to what was alleged in the initial Complaint for which the court set a bellwether trial. Most notably, Malibu apparently now seeks to abandon the "swarm theory," and it appears to take the position that a "swarm" exists, but that the case should proceed only against one, seemingly random, member of the swarm.[6] This "swarm of one" theory is without precedent.

Presumably, Malibu did this because the mass joinder copyright actions Malibu files are geared towards extracting quick settlements – not actually taking a swarm to trial. Malibu now seeks to have it both ways – early discovery predicated on the unified "swarm theory," and its case (upon being forced to prosecute it by this court) based on singular alleged infringers, while completely omitting the all-important initial seeders. What happened seems to be that Malibu used the early discovery to cast a net over a wide number of defendants, but now chooses to cherry pick defendants from different swarms.

---

[5]     Malibu filed a similar Amended Complaint in the other bellwether action, *Malibu v. Does 1-14*, 2:12-cv-02084-MMB, against just Doe #6 enlarging the time period and alleged works infringed (Dkt. No. 39) Malibu dropped all the other Does on August 17, 2012 and is now proceeding against just Doe #6 for works not initially alleged in the Complaint. (Dkt. No. 18). Malibu admits that each of the defendants copied and distributed most of a website containing 57 movies. This is known as a "siterip." According to Malibu in other similar actions, the file containing the subject website is so large that the Defendants' computers must have worked collaboratively with each other through the process described for numerous weeks or months to effectuate complete download and retribution of the website.

[6]     Each swarm has an "initial propagator," or "initial seeder." This is the party who initially commenced the distribution of the file. See *Malibu Media v. Doe*, 2012 U.S. Dist. LEXIS 152500 (C.D. Cal. Oct. 10, 2012); *Patrick Collins v. Doe*, 2012 U.S. Dist. LEXIS 140548. For some reason, none of the defendants in this case are alleged to be the initial seeder of any file.

3

When considering litigating the "swarm theory," Malibu was faced with the prospect of dozens of defendants, joined in their common defense against the plaintiff, with an initial seeder who very well may have had a license to publish the works to BitTorrent or elsewhere.[7]  When push came to shove, Malibu decided to dismiss more than eighty percent of the defendants it initially sued, despite its prior claims that the cases were brought against unified "swarms." Malibu apparently thought better of the swarm theory, and decided to reduce the number of defendants.  However, Malibu cannot properly abandon its foundational theory and still leave the case against Doe 13 intact.  The swarm theory of liability relies upon a "swarm" of defendants and renders these now-dropped defendants indispensable to the action.  Without even an allegation against the initial seeder, we have no idea whether Malibu itself seeded the relevant files.[8]  As Malibu does freely distribute the relevant films,[9] it is entirely possible, if not most likely, that the initial seeder had permission to distribute the files via BitTorrent.[10]  If he or she did not, it is entirely likely that a participant in the swarm, from whom Doe 13 received the file, may have had such permission.  Malibu's omissions speak loudly in favor of dismissal.  Unless Malibu re-joins these previous defendants, including the initial seeder, the Court must dismiss the action against Doe 13, who is by Malibu's own theory incapable of according Plaintiff full and complete relief.

To add to the impropriety, Malibu abandoned its "swarm theory" while adding in additional infringements (and presumably new swarms) without joining the initial seeder or other members of those swarms - a position completely inconsistent with nearly every other case it has ever filed, and inconsistent with its filings in this case, and inconsistent with logic. Further, it did so apparently in violation of the Court's order granting early discovery.

---

[7]     Malibu's investigation company, IPP, Ltd., was previously called Guardaley, Ltd.  While it had that name, it was accused of being the seeder for swarms its customers later such over. **Exhibit F.**

[8]     See footnote 7, *supra.*

[9]     See, e.g., http://www.pornhub.com/view_video.php?viewkey=363512250 and http://www.pornhub.com/users/x-art, distribution of Plaintiff's works by the Plaintiff.

[10]     Or it was Malibu's own agent.  See footnote 7, *supra.*

4

Malibu's initial Complaint alleged that twenty-two Pennsylvania BitTorrent users shared the movie "Tiffany - Sex With a Supermodel[11]" from December 22, 2011 through March 10, 2012. The Complaint accused twenty-two BitTorrent users of sharing the same movie with the same people located in the same state in the Complaint, over the span of about three months. It requested joint and several relief against all of them. On that basis, the court correctly held that joinder is proper[12].

However, Malibu did not file an action against the entire swarm for the new additional Works now added to the Amended Complaint, nor has it sued any of the initial seeders of those works. Instead, it is now pursuing just the three Does initially joined on the basis of sharing "Tiffany - Sex With a Supermodel[13]" without the initial seeder even named or as a John Doe. The Amended Complaint did not join the other members of the swarm for the additional Works now at issue, despite admissions from Malibu that they are indispensable parties, and that the movies can only be distributed by a "swarm."

Jettisoning its "swarm" theory midstream and pursuing random individuals without an initial seeder defendant is a common tactic for Malibu[14] whenever it is challenged to actually

---

[11]     According to the Complaint, all of the Does allegedly shared Tiffany Sex With a Supermodel with each other.  According to the Amended Complaint, Doe #13 shared Tiffany Sex with a Supermodel between February 29, 2012 and March 1, 2012. However, Doe #14 shared Tiffany Sex with a Supermodel on December 5, 2012, and Doe #1 shared the same on December 22, 2012. In other words, Doe #13's initial alleged infringement in the Complaint occurred over a month <u>after</u> Doe #1 and #14's alleged infringements.  Here, Malibu's basis for joinder was "Tiffany Sex with a Supermodel."  It is no using information obtained in discovery to purse other alleged infringements, using subpoena power to carry out a bait and switch.

[12]     Doe #13's former counsel disputed that joinder was proper in the Complaint. Doe #13 no longer disputes that joinder was proper. It was.  However, the omission of the initial seeder from the initial complaint also rendered it dismissable.

[13]     X-Art made "Tiffany - Sex With a Super Model" available on YouPorn.com for free on August 13, 2011. The video has since been viewed 12,048,579 times since X-Art uploaded it. See the video, available at: http://www.youporn.com/watch/613931/x-art-sex-with-a-super-model/?from=search_full&pos=9.

[14]     Changing tactics is also a common theme when Malibu pursues settlements. Malibu will typically file a Complaint based on one movie allegedly shared by several similarly situated individuals in order to obtain the Does' identities in discovery, like it did here. When contacted about settlement, Malibu will then advise that the defendant is being accused of sharing other movies not at issue in the litigation. See Declaration of Morgan Pietz, ¶¶ 25-31, **Exhibit A**.

litigate. For instance, in *Malibu Media, LLC v. Jeff Fantalis and Bruce Dunn*, 1:12-cv-00886-MEH, Malibu tried to employ the same tactics. On November 13, 2012, Defendant Fantalis brought it to the court's attention when he argued:

> As noted above, the allegations of Plaintiff's Complaints against defendant… were very clear: these defendants are jointly and severally liable; they participated together in one massive, collective activity; and they could not possibly have acted alone because this was such a huge undertaking — in fact, the very nature of the technology requires concerted action. Thus, for Plaintiff now to say that each act of infringement was discrete and unique is not only disingenuous, it gives the lie to the entire foundation of Plaintiff's cases across the nation. Either the defendants worked together or they didn't. Either they participated in the BitTorrent or they didn't. This is a question of fact without which Plaintiff cannot succeed in its case: if Plaintiff wants to concede this issue, it should be required to dismiss its entire case against Defendant.[15]  **Exhibit B**.

Mr. Fantalis was right: Malibu cannot have it both ways. Joinder is either proper or it is not. Since Malibu alleged that the whole swarm is jointly and severally liable for infringement of its works on BitTorrent, and that the technology required the swarm to be joined together in the initial action (and in all its other actions through the country), it must join the remaining members of the swarm for each movie in question under Fed. R. Civ. P. 19.  If not, it must, at least name the initial seeder as a defendant.  Malibu cannot possibly not have this information, given the allegations they have made in this case.

Accordingly, this Court should require Malibu to join the initial seeders, the defendants identified within its Complaint, and the twenty-two Does accused of sharing "Tiffany - Sex With a Supermodel" and to identify and join all members of the swarm it contends shared the additional Works at issue in the Amended Complaint. Otherwise, Malibu will continue to file mass joinder actions, picking off an occasional Doe or two whose name it discovers while on a fishing expedition carrying the "swarm theory" as judicial bait.  Then, once the Court takes the bait, Malibu shifts to this "swarm of one" theory.

---

[15]     On November 15, 2012, just two days later, Malibu settled with Jeff Fantalis for an undisclosed amount. This suggests that Malibu sees the wisdom in Fantalis' position.

This failure to join indispensible parties is not the only deficiency.  Although Malibu has extracted many settlements as a serial litigant in this district and throughout the country, Malibu does not own the right to sue for many of the works the Amended Complaint claims were infringed.  In fact, Malibu may have lacked standing to file the initial complaint – from where it gathered all of the early discovery in this case.  Set forth in more detail below, many the Works complained of were created before Malibu Media even existed and the change of title is incomplete.  Malibu does not have an assignment allowing it to sue for past infringement, which it concealed from both the Court, the Defendants, and those parties Malibu settled with.

For these reasons, the accompanying proposed order should be entered.

## II.    Legal Argument.

### A.    Malibu Lacks Standing to Prosecute This Action Because It Does Not Own the Works in the Amended Complaint

Several of the movies complained of in Malibu's Amended Complaint were created by a "Brigham Field."  Malibu Media, LLC was formed in California on February 8, 2011.  **Exhibit C**.  Many of the movies at issue in the Amended Complaint[16] were created before Malibu Media, LLC even existed.  Thus, on the face of the Complaint, we can see that Malibu was completely separate from the creative process of producing the films in question.

On June 14, 2012, Malibu filed an action in Eastern District of Michigan[17] against 13 John Doe Defendants alleging statutory Copyright Infringement claims. In its Complaint, Malibu stated that they owned the Works at the time this action was filed. The Copyright Act provides that only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement…" 17 U.S.C. § 501(b).

---

[16]    "Tiffany - Teenagers in Love" was the basis for filing the Complaint in *Malibu Media v. Does* 1-14, 2:12-cv-02084-MMB, which has been consolidated with this action. However, Malibu did not have a right to sue for past infringements for this work, so all of the information obtained in the 02084 action was based on a false premise – Malibu having a right to sue for that work in question.

[17]    *Malibu Media, LLC v. Does 1-13*, 2:12-cv-12586-PJD-MJH.

The defendants in that case filed Motions to Quash Malibu's third party subpoena to ascertain their identities on a number of grounds, including that the named Plaintiff lacked standing to bring the action. This motion remains pending before the Michigan District Court. Caught in a difficult situation, Malibu tried to correct the deficiency by filing new registrations with the copyright office on September 13, 2012, through its counsel, Lipscomb, Eisenberg & Baker, P.L.  In the new registrations, Malibu stated to the copyright office:

> This particular work was created by Brigham Field and was transferred through an assignment of copyright to Malibu Media, LLC after the company was formed and was not originally created as a work for hire.
>
> Brigham Field's current arrangement with Malibu Media, LLC is that the movies he creates are a work for hire and owned by Malibu Media, LLC. This agreement is in writing. When he instructed his agent to register this work, he mistakenly told his agent to register this work as a work for hire authored by Malibu Media, LLC.  **Exhibit D**.

When asked to produce the "assignments in writing", Malibu produced <u>undated</u> written assignments for the following movies (ECF 34-1, **Exhibit E**):

- Carlie Beautiful Blowjob (November 11, 2011)
- Carlie Leia Strawberries and Wine (November 18, 2011)
- Kat Translucence (November 19, 2011)
- Katka Cum Like Crazy (November 21, 2011)
- Katka Sweet Surprise (August 4, 2010)
- Kristen Girl Next Door (August 25, 2012)
- Leilia Sex on the Beach (December 22, 2010)
- Tiffany Teenagers in Love (December 29, 2010)
- Tori The Endless Orgasm (December 20, 2010)
- Carlie Big Toy Orgams (March 22, 2010)
- Daddy's Office (November 12, 2010)
- Girl In My Shower (October 23, 2009)
- Jennifer Naughty Angel (November 5, 2010)
- Leila Faye Awesome Threesome (February 2, 2011)
- Leila Sex On The Beach (December 22, 2010)

Many of the works listed above are at issue in this litigation.

However, there was a critical defect with the Assignments — Brigham Field only assigned the rights, title and interest in the <u>works</u> to Malibu. The Assignments fail to expressly

include any of the exclusive rights enumerated under Section 106, and do not include any accrued rights to sue for past infringements.  **Exhibit E.**  This renders Malibu's standing in this case doubly questionable.

### 1.   Malibu Media Does Not Own Any Exclusive Rights In the Identified Works

Malibu alleges in its Amended Complaint that "Plaintiff is the owner of those United States Copyright Registrations attached hereto as Composite Exhibit A. Each registration covers a copyrighted work which was infringed by one or more of the Defendants in this case." (Amended Complaint ¶10).  While Malibu may own the "registrations," this is insufficient to confer standing to prosecute a copyright infringement claim.  A plaintiff must also own exclusive rights in the work.  *Sybersound Records, Incorporated v. UAV Corporation*, 517 F.3d 1137, 1146 (9th Cir. 2008).  The Assignment ostensibly conveying ownership from Mr. Field to Malibu Media does not mention any exclusive rights in the works.  In fact, the Assignment does not even contain the word "exclusive."  **Exhibit E**.  Accordingly, the assignments are nothing more than licenses, and thus insufficient to confer standing.

In *Sybersound Records, Incorporated v. UAV Corporation*, TVT Records attempted to provide *Sybersound* with a blanket assignment of rights similar to that found in this case – but ultimately failed.  517 F.3d at 1146.  TVT assigned its copyrighted interest in the use of its works to *Sybersound*, and *Sybersound* set off to sue infringers of its newly acquired rights.  *Id*.  TVT, however, was not the sole owner of these copyrights.  Because TVT's assignment was non-exclusive, Sybersound had acquired only a non-exclusive license, "which gives *Sybersound* no standing to sue for copyright infringement." *Id*.

In this case, the Assignment contains no provision of any exclusive rights from Field to Malibu Media.  The assignment is silent as to what, if any, rights Field has within the films. Rather than transferring any discernible exclusive rights under Section 106 to Malibu Media, Mr. Field has executed what is essentially a quit-claim deed to Malibu Media, giving Plaintiff a jumble of unidentified rights (or perhaps none at all) that, on the face of the assignment, do not include the rights required to sustain an infringement action: exclusive rights under Section

9

106.[18]  Absent any indication that Field possessed full, undivided interest in the copyrighted works or exclusive rights therein, there is no basis on the face of the assignment for finding that Malibu Media acquired any exclusive rights and nothing in the assignment addresses past infringement.[19]

Courts from coast to coast have consistently held that exclusive rights are needed to sustain an action for copyright infringement. *Hyperquest, Inc. v. N'Site Solutions, Inc.,* 632 F.3d 377, 383 (7th Cir. 2011); *Sybersound*, 517 F. 3d at 1146; *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Silvers v. Sony Pictures Entertainment,* 402 F.3d 881 (9th Cir. 2005); *ABKCO Music Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982); *Righthaven LLC v. Wolf,* 813 F. Supp. 2d 1265, 1273 (D. Colo. 2011); *Righthaven LLC v. Hoehn,* 792 F. Supp. 2d 1138; *Righthaven LLC v. Democratic Underground LLC et al.,* 791 F. Supp. 2d 968 (D. Nev. 2011).

The right to sue for copyright infringement under Section 501 requires ownership of exclusive rights. *Silvers*, 402 F.3d at 889-890, *citing Eden Toys*, 697 F.3d at 32 and *ABKCO Music*, 944 F.2d at 980.  The rights Malibu Media obtained from Field are determined by the agreement's substantive terms.  *Hyperquest*, 632 F.3d at 383.  When the agreement lacks "clearly delineated exclusivity over at least one strand in the bundle of rights" contained in Section 106, the putative copyright owner lacks the right to bring suit.  *Hyperquest*, 632 F.3d at 384-85.

---

[18]  Even if all exclusive rights were granted, the right to sue for past infringement, as discussed *infra*, is not transferred unless the instrument of transfer expressly says so, as argued *infra*.

[19]  The assignment's vague language is eerily similar to the same quitclaim language used by now-defunct copyright infringement enforcement operation Righthaven LLC, which used similarly vague language concerning the rights it acquired in the works underlying its infringement lawsuits.  Upon discovering a secret agreement between Righthaven LLC and the works' original creators which specifically deprived Righthaven LLC of exclusive rights in the works, U.S. District Judge Hunt ultimately characterized Righthaven LLC's reliance on this quitclaim language as "disingenuous," writing that:

> Righthaven led the district judges of this district to believe that it was the true owner of the copyright in the relevant news articles. Righthaven did not disclose the true nature of the transaction[.] As the [the original creator] *retained* the exclusive rights, never actually transferring them to Righthaven. *Democratic Underground*, 791 F. Supp. 2d at 976.

Courts across the nation have come to the same substantive conclusions.   See, e.g., *Hyperquest,* 632 F.3d at 383; *Sybersound*, 517 F. 3d at 1146; *Chalupnik*, 514 F.3d at 753; *Silvers*, 402 F.3d at 881; *ABKCO Music*, 944 F.2d at 980.  In *Righthaven LLC v. Wolf*, the U.S. District Court for the District of Colorado considered the question of what copyright rights are required to have standing to sue for infringement under Section 501. 813 F. Supp. 2d at 1268-69. Based a purely on statutory analysis, District Judge Kane found an "expansive" view of the right to sue is inconsistent with the Copyright Act's principles. *Id*. at 1271-72.  Thus, while owners of exclusive rights may bring suit, "a complete stranger to the creative process" cannot institute an action for infringement. *Id*. at 1272.  Judge Kane's logic  is fully consistent with the Copyright Clause.  U.S. Const. Art. I § 8 cl. 8.  The purpose of the Copyright Clause is to incentives the creation of a robust public domain, although many also believe that its purpose is to incentivize author to create new works.[20]  That is what seems to have happened here: Plaintiff is an LLC created for the sole purpose of bringing copyright infringement suits and shielding the real parties in interest from liability if such litigation failed and attorneys' fees were awarded, *a la* Righthaven.  The failure of such a scheme should be clear if anyone reviews the history of that ill-fated enterprise.

This Court has not had the opportunity to consider this issue as broadly as the District of Colorado, yet has supported the logic in both *Silvers* and *Wolf*.  In *Patchen v. McGuire*, U.S.

---

[20]      The Copyright Clause and Act's primary purposes are to incentivize individual creators to undertake the production and distribution of original works while fostering the creation of a robust public domain. *Golan v. Gonzales*, 501 F.3d 1179, 1188 (10th Cir. 2007).  The Framers "intended copyright itself to be the engine of free expression." *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 558 (1985).  The monopoly copyright laws confer onto creators primarily exists to incentivize creation of works that will benefit the public. Id. at 546 ("copyright thus rewards the individual author in order to benefit the public").  While copyright's immediate effect is to protect an author's labor, its overarching goal is "to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).  Congress has pursued this goal using the economic philosophies underpinning the Copyright Act to encourage individual effort by personal gain as "the best way to advance public welfare through the talents of authors." *Mazer v. Stein*, 437 U.S. 201 219 (1954). "The sole interest of the United States and the primary object in conferring the monopoly [of copyright] lie in the general benefits derived by the public from the labors of authors." *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932).

District Judge Yohn relied upon *Silvers* to support the proposition that only owners of exclusive copyright rights may bring infringement actions.  2012 WL 4773233 at *15.  While the analysis in *Patchen* was not as extensive as that in *Wolf*, this District signaled its concurrence with the underlying logic in both decisions by reaching the result both cases compel: Limiting the right to sue for infringement to owners of exclusive rights, and not opening the courthouse doors to strangers to the creative process.

Field's assignment to Malibu Media is insufficient to demonstrate Plaintiff is not a "complete stranger to the creative process" prohibited from bringing suit. *Wolf*, 813 F. Supp. 2d at 1272, *citing Silvers*, 402 F.3d at 891.  The assignment is silent as to Field's ownership interests in the works.  Rather than stating that he is the sole and exclusive owner of the works, the agreement uses the conceit of Field assigning all of his "right, title and interest" in the works without ever identifying what those rights might be.  Field cannot give away more than he possessed, and it is in no way clear from the assignment that Field had any exclusive rights that he may validly assign to Malibu.  Further supporting this view is the assignment's silence on the issues of exclusivity, and the failure to identify even a single right under Section 106 that Field transferred to Malibu.

Cumulatively, these many flaws – the lack of identification of what ownership interest was transferred, the silence as to exclusivity, and the failure to identify any exclusive rights Filed assigned to Malibu Media – are insurmountable.  Malibu cannot show that it possesses a single exclusive right in the works it claims to own as of the date suit was filed. The assignment represents a careful sleight of hand that says nothing, but is intended to create the appearance of standing.  The assignment fails to establish Malibu Media possessed any kind of exclusive rights that would entitle it to sue Defendant for copyright infringement as of the date of suit.  Accordingly, Malibu lacks standing to bring this action, and thus is must be dismissed under Fed. R. Civ. P. 12(b)(1).

**2.    Malibu Media Does Not Possess The Right to Sue Defendant for Previous Infringement of its Now-Owned Works.**

Even if Malibu currently owns exclusive rights in the copyrighted works, Plaintiff failed to plead when it acquired such ownership.  Malibu Media's undated copyright assignment is, like its Amended Complaint, unilluminating.  Malibu Media cannot surmount the conclusion that it failed to acquire any accrued causes of action for infringement pre-dating John Doe 13's alleged infringements and Malibu Media LLC's very existence.

The right to sue for past infringement can be transferred to another party so long as it is expressly included in the assignment along with an exclusive right enumerated within Section 106.  *Hyperquest*, 632 F.3d at 383; *Silvers*, 402 F.3d 881; *ABKCO Music Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Patchen v. McGuire*, Case No. 11-5388, *2012 WL 4773233* at *15 (E.D. Pa. Sept. 27, 2012) (citing *Silvers* with approval); *Wolf*, 813 F. Supp. 2d at 1273; *Hoehn*, 792 F. Supp. 2d 1138; *Democratic Underground LLC et al.*, 791 F. Supp. 2d 968.  Plaintiff has asserted statutory infringement claims under Section 501 despite failing to acquire accrued causes of action for infringement.[21]

If a party does not expressly assign the right to sue for past infringements, then that right is retained by the initial copyright owner.  *Wellness Publ. v. Barefoot*, Copy. L. Rep. (CCH) P29, 507 (D.N.J. Jan. 8, 2008) ("[I]t appears to be well established that  copyright holder can assign its copyright interests but nevertheless retain the right to bring legal actions that accrued during the assignor's ownership of the copyright. In fact, an assignor need not expressly reserve its right in a legal action that accrued during its ownership as Wellness did. An assignor retains such a right unless it is expressly assigned to the assignee along with the copyright."); *see also Silvers* 402 F.3d at 881; *ABKCO Music Inc. v. Harrisongs Music, Ltd.*, 944 F.2d at 980; *Wolf*, 813 F. Supp. 2d at 1273.  As it did not gain this right before filing this action, it cannot resurrect standing with a new assignment.  Post-filing corrective assignment cannot resurrect standing.

---

[21]    Worse, despite lacking these rights, Plaintiff's lawsuits have apparently already resulted in the settlement of claims against other Does – collecting thousands of dollars from litigation it likely had *no right to even commence*. (See, e.g., 2:12-cv-02084-MMB)

See *Wolf*, 813 F. Supp. 2d at 1273; *Hoehn*, 792 F. Supp. 2d 1138; *Democratic Underground LLC et al.*, 791 F. Supp. 2d 968.

 The accrued right to sue was not expressly included in Plaintiff's copyright assignment. **Exhibit D**.  The United States Court of Appeals for the Second Circuit has held that "**if the accrued causes of action are not <u>expressly</u> included in the assignment, the assignee will not be able to prosecute them**." *ABKCO Music,* 944 F.2d at 980 (emphasis added).  ABKCO Music's right to bring its claims arose "not out of its ownership of the copyright, but from its ownership *of the claims themselves* which it purchased, along with the copyright." *Id*. at 981 (emphasis added).  See also *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 45, 47 (D. Del. Bkr. 1999) (holding that where governing law "requires an express undertaking […] we will not presume such consent by mere silence").  See also See *Wolf*, 813 F. Supp. 2d at 1273; *Hoehn*, 792 F. Supp. 2d 1138.

 For accrued claims of infringement to transfer to an assignee, the assignment must "cover in no uncertain terms choses in action for past, prior, accrued damages." *Prather v. Neva Paperbacks, Inc*., 410 F.2d 698, 700 (5th Cir. 1969).  Even where the entire "right, title and interest" in a copyright is assigned to another party, such an assignment **does not include the right to sue for past infringements**. *Kriger v. MacFadden Pubs., Inc.*, 43 F. Supp. 170, 172 (S.D.N.Y. 1941), *citing U.S. v. Loughrey*, 172 U.S. 206, 212 (1898) (holding that purchase of a parcel of land does not carry with it "a right of action for prior trespasses or infringements," but "they only pass with a conveyance of the property itself where the language is clear and explicit to that effect"); see also *Wolf*, 813 F. Supp. 2d at 1273; *Hoehn*, 792 F. Supp. 2d 1138; *Democratic Underground LLC et al.*, 791 F. Supp. 2d 968.

 The U.S. Court of Appeals for the Third Circuit has not had occasion to address this issue, but a sister court within this Circuit has, and concurs with the rulings of the Second and Ninth Circuits on this subject.  The District of New Jersey found that an original copyright owner, despite assigning its ownership, retained all accrued causes of action during the course of the copyright's ownership. *Wellness Publ. v. Barefoot*, Copy. L. Rep. (CCH) P29,507 (D.N.J.

Jan. 8, 2008), *citing Silvers*, 402 F.3d at 881, and *ABKCO Music*, 944 F.2d at 980.  The *Wellness* court mirrored the logic of *ABKCO Music* within its analysis:

> an assignor need not expressly reserve its right in a legal action that accrued during its ownership as Wellness did. An assignor retains such a right unless it is expressly assigned to the assignee along with the copyright. *Id*.

As seen in **Exhibit E**, Field's assignment to Malibu Media fails to explicitly transfer these accrued claims to Plaintiff.  To the extent the assignment was executed after Defendant's alleged infringement, Malibu Media, lacking the right to sue for accrued infringement, has no standing to pursue this action.  The Amended Complaint alleges infringement occurring up to April 10, 2012 (Am. Compl. Exh. C).  Field's assignment to Malibu Media covers works first published as recently as August 25, 2012 – more than four months after the last infringement alleged in the Complaint (*id*.) – and thus the assignment could only been completed on or after August 25, 2012.  Field's assignment fails to grant Malibu the right to pursue claims for past infringement, thus Malibu lacked standing to bring a claim for any of the infringements alleged in the Amended Complaint. Exhibit D; Am. Compl. Exh. C.

The Plaintiff may not cure this ill, either.  Plaintiff cannot retroactively obtain the right to sue for prior infringement by altering the rights it owns once suit has been filed. *Hoehn*, 792 F. Supp. 2d at 1147; *Democratic Underground*, 791 F. Supp. 2d at 974. "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4 (1991), *quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 823, 830 (1989) (emphasis in *Lujan*).  Thus, there is no risk of Plaintiff amending this assignment to cure its defects; as Malibu Media lacked Article III standing at the time of filing, it has no means to resuscitate its case. *See Id*.

### B.    Plaintiff Failed to Join Indispensable Parties.

In the context of swarm theory, joinder is a binary concept, and it is either proper or it is not —Malibu cannot have it both ways. Further, any action against an alleged file sharer requires the joinder of the initial seeder.  As a basis for joining twenty-two Does in the initial action (and

similar actions both in this district and around the country[22]), Plaintiff's Complaint alleged that:

> Pursuant to Fed.R.Civ.P. 20(a)(2), each of these defendants is properly joined because, as set forth in detail below, Plaintiff asserts that (a) each of these defendants is jointly and severally liable for the infringing activities of the other defendants; and (b) the infringement complained of herein by each of the defendants was a part of a series of transactions, involving the exact same torrent file containing Plaintiff's copyrighted Works, and was accomplished by the Defendants acting in concert with each other, and (c) there are common question of law and fact; indeed, the claims against the Defendants are identical and each of the Defendants used the BitTorrent protocol to infringe on Plaintiff's copyrighted Works. (Complaint, ¶10)

> Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm though digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions. (Complaint, ¶33).

> ...one initial seeder can create a torrent that breaks up a movie into hundreds or thousands of pieces saved in the form of a computer file, like the work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm. (Complaint, ¶34).

On June 29, 2012, Doe #13 filed a Motion to Dismiss, requesting this Honorable Court to sever the action. (Dkt. No. 15). In opposition to this motion (Dkt. No. 20), Malibu represented to

---

[22]     For example, Malibu filed these cases in California: *Malibu v. Does 1 - XX*, 2:2012-cv-01647,  2:2012-cv-01642,  2:2012-cv-01675,  2:2012-cv-03614,  2:2012-cv-03615,  2:2012-cv-04656,  2:2012-cv-04650,  2:2012-cv-05592,  2:2012-cv-05593,  2:2012-cv-05594,  2:2012-cv-05595,  2:2012-cv-05596,  2:2012-cv-03617,  2:2012-cv-03619,  2:2012-cv-03620,  2:2012-cv-03621,  2:2012-cv-03622,  2:2012-cv-03623,  8:2012-cv-00647,  8:2012-cv-00649,  8:2012-cv-00650,  8:2012-cv-00651,  8:2012-cv-00652,  2:2012-cv-04653,  2:2012-cv-04651,  2:2012-cv-04658,  2:2012-cv-04657,  2:2012-cv-04652,  2:2012-cv-04649,  2:2012-cv-04662,  2:2012-cv-04660,  2:2012-cv-04661,  2:2012-cv-04654,  2:2012-cv-01255,  2:2012-cv-01260,  2:2012-cv-01261,  2:2012-cv-01262,  2:2012-cv-01459,1:2012-cv-00886,  1:2012-cv-00888,  2:2012-cv-01513,  2:2012-cv-01514  3:2012-cv-01052  3:2012-cv-01054  3:2012-cv-01051  3:2012-cv-01056  3:2012-cv-01059  3:2012-cv-01061  3:2012-cv-01135  3:2012-cv-00362  3:2012-cv-01049  3:2012-cv-01354   3:2012-cv-01355   3:2012-cv-01357   3:2012-cv-01370   3:2012-cv-01372   3:2012-cv-00358, 3:2012-cv-00369.   These cases represent just a minor fraction of the actions Malibu Media has filed in 2012 alone, alleging that joinder is essential throughout the country, which are now believed to be in excess of 400.

this court that joinder is proper because:

- The infringement occurred through a series of transactions. (p. 5-6)
- Each defendant participated in the same series of transactions. These transactions are all reasonably related, not just because Defendants used BitTorrent, but also because Defendants utilized the computers of others to download the same file, and allowed others to access their computer to receive it. (p.7)
- The defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. In doing so, the Defendants all acted under the same exact system. (p. 8-9)
- Plaintiff asserts a right to relief jointly against Defendants and severally. Therefore, the first clause of Rule 20(a)(2)(A) is satisfied by the assertion of a right severally. (p. 10).

To summarize, Plaintiff's Complaint was premised on twenty-two Pennsylvania Does having shared "Tiffany - Sex With a Supermodel" between December 22, 2011 through March 20, 2012 with each other. Based on Malibu's representations in its Complaint and Opposition to Doe #13's Motion to Sever, this Honorable Court correctly held that joinder was proper.[23]

Yet, on August 16, 2012, all copyright "John Doe" cases were referred to Judge Baylson for monitoring and supervision. The very next day, Malibu inexplicably dismissed Does 3, 4, 5, 7, 9, 11, 12, 15, 16, 17, 18, 20, 21 and 22 from this action[24]. Malibu's voluntary dismissal left just Does 1, 13, and 14 in the suit. (Dkt. No. 23).

Malibu represented that it dropped all but three of the Does because "Plaintiff has recently received the names and identifying information of many of the Defendants in this case and is unable to coordinate service of process to properly serve these Defendants by the Rule 4(m) deadline" and "Plaintiff plans on further investigating and confirming the information

---

[23]    Doe 13's motion to sever was prepared by his previous counsel.  Current counsel believe that the motion was inapt, and the court's decision that joinder is proper is absolutely correct.

[24]    Malibu also dropped Does 1, 2, 3, 4, 5, 7, 9, 11, 12, 13 & 14 in the other action, leaving just Doe #6 in the case, followed by a similar Amended Complaint on November November 2, 2012. (Dkt.Nos. 18 and 40 in 2:12-cv-02084-MMB).

provided by the Internet Service Provider and will re-file and serve each Doe Defendant if deems necessary." (Dkt. No. 23).[25]

On November 2, 2012, Malibu filed an Amended Complaint against Does #1, #13, and #14 including several new Works at issue, despite the fact that none of them are alleged to have infringed upon the same films at the same time. Plaintiff omitted certain allegations contained in the Complaint, such as a statement as to why Joinder is proper. (For instance, compare Complaint ¶10 with Amended Complaint. Malibu has omitted many of the allegations it relied upon making joinder proper. It is respectfully submitted that Malibu wants these Defendants to be severed, since it has no desire to actually try a swarm.)

As a basis for joinder in the Amended Complaint, this time Malibu alleges:

- "...the BitTorrent protocol allows users to join a 'swarm' of host computers to download and upload from each other simultaneously" (one computer connected to numerous computers.) (Amended Complaint, ¶12).
- Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites then other peers begin to download and upload the computer file to which the torrent is linked using the BitTorrent protocol and BitTorrent Client that peers installed on their computers. (Amended Complaint ¶26)
- The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer to peers seeking to download the computer file. (Amended Complaint, ¶27).
- Once a peer receives a piece of the computer file, it starts transmitting that piece to the other peers. (Amended Complaint ¶28)
- In this way, all of the peers and seeders are working together in what is called a "swarm." (Amended Complaint ¶29).
- Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm that Was Distributing Plaintiff's Copyrighted Works(s) (Amended Complaint, ¶E)

Malibu's Amended Complaint substantially enlarged the amount of files the Does are accused of downloading and expanded the time period, alleging that:

---

[25]      Malibu admits that it picks and chooses members of a swarm to facilitate settlements.  Its goal is to "fly under the radar" by keeping the swarm to about 22 defendants.

- Doe #1 shared Veronica Wet Orgasm, Girls Night Out, The Rich Girl Part 2, and Tiffany Sex With a Supermodel between December 16, 2011 through December 22, 2012. (Amended Complaint, Ex. C)
- Doe #13 shared Girls Night Out, Anneli Menage Trois, Girls Night Out, Tiffany Sex With a Supermodel, Fucking Perfection, X-Art Siterip #1, X-Art Siterip #2, and X-Art Siterip #14 between January 25, 2012 and April 10, 2012 (Amended Complaint, Ex. D and G)
- Doe #14 shared Tiffany Sex With a Supermodel, The Rich Girl Part #2, Anneli Menage Trois, Leila Last Night between December 5, 2011 and February 20, 2012. (Amended Complaint, Ex. E)

The initial Complaint failed to include any allegations against the initial seeder, as does the Amended Complaint.  The alleged infringement is impossible without an initial seeder, and the initial seeder may very well have had a legal privilege to publish or distribute the works for free.[26] However, the Plaintiffs failed to join the initial seeder as a party to this suit.  Dismissal under F.R.C.P. 19 mandates a two-step analysis: (1) Whether an absent party is necessary to the suit; and (2) if so, and if that party cannot be joined, whether the party is indispensable such that in equity and good conscience the suit should be dismissed.  *Clinton v. Babbitt,* 180 F.3d 1081, 1088 (9th Cir. 1999).  Here, the absent party is necessary to the suit because, under F.R.C.P. 19(a), complete relief cannot be accorded among those already parties to this suit in the absence of the initial seeder or other members of the swarm.  These absent parties are the sources from which Doe 13 would have received the file and parties to whom Doe 13 allegedly distributed it.  Without this, complete relief is impossible.

Although the initial Complaint alleged that twenty-two Doe Defendants composed the swarm, now Malibu is only pursuing three of them, none of whom were members of the same swarm.  The Amended Complaint further alleges that the Does downloaded different movies on different dates, sharing them among entirely different people, but it does not attempt join those who commenced, continued, supplied, or received the additional Works, nor does it allege with whom the works were shared, or who brought the works to the BitTorrent sphere.  Accordingly,

---

[26]    See, e.g., http://www.pornhub.com/view_video.php?viewkey=363512250 and http://www.pornhub.com/users/x-art, distribution of Plaintiff's works by the Plaintiff.

each "swarm" is now made up of one defendant which Malibu has chosen at their convenience,[27] and which omits the initial seeder.

This district has previously held that where an unjoined party's rights and actions may affect the litigation's outcome, the absent party must be joined to the action. *Musumeci v. Reborn Products Co., Inc.*, 184 U.S.P.Q. 736 (E.D. Pa. 1974) (requiring joinder of patent owner in breach of contract claim where the patent's validity and underlying rights would have affected the litigation).

In *Chadwick v. Arabian American Oil Co.*, a colleague court established three requirements for when a party should be joined: i) complete relief cannot be accorded among those already parties without the absent party; ii) the absent party claims an interest in the action; and iii) the absence of the interested party may subject the persons already parties to the risk of incurring multiple and inconsistent judgments.   656 F. Supp. 857, 862-63 (D. Del. 1987). Following this inquiry, the Court must then consider whether in equity and good conscience, the action should be dismissed because the absent parties are indispensable to the action. *Id*. at 863. In *Chadwick*, the court ultimately dismissed the action for plaintiff's failure to join three Saudi Arabian parties to its Delaware litigation. *Id*. at 862-63.

---

[27]     Accepting Plaintiff's allegations as true, each torrent file can be uniquely identified by an alphanumeric identifier known as a "hash," which acts as a fingerprint to each torrent. Am. Compl. ¶¶ 18-19. A swarm shares the torrent file identified by that hash. *Id*. ¶ 36.  Based on Plaintiff's evidence, the Does joined in this case are only three members in the swarm accused of infringing "Tiffany Sex With a Supermodel" using a torrent identified by the hash beginning "FFF." Am. Compl. Exhs. C-E.  None of the other torrents or hashes are common to all three Does in this action. *Id*.  In Defendant's case, Defendant is the *only Doe* alleged to infringe on X-Art Siterip #1, X-Art Siterip # 2, X-Art Siterip # 14, and Fucking Perfection. *Id*.  Malibu's allegation of Defendant's infringement of these works without joining any other swarm members in this action is disingenuous and undermines its own theory of liability, which is predicated on the entire swarm's participation in sharing and distributing infringing works.  As Malibu itself alleges, "all of the peers and seeders [work] together in what is called a 'swarm.'" Am. Compl. ¶ 29.  By Malibu's logic, Defendant would have nobody to copy and distribute the underlying files to without other members of the swarm present. *Id*. ¶¶ 12, 27-30.  Just as Defendant's alleged infringement would have been impossible but for the swarm's existence, Plaintiff's explanation of the swarm's operation, nature, and purpose contradicts its choice to name Defendant as the one-person swarm allegedly liable for the infringement of X-Art Siterip #1, X-Art Siterip # 2, X-Art Siterip # 14, and Fucking Perfection. See Am. Compl. Exh. D.

Given that the initial seeder, and/or swarm participants preceding Doe 13 may have either had license to distribute the works, or may have pulled them from free sources of the works, we cannot have meaningful litigation by focusing on one snapshot defendant.  By Malibu's own admission, the torrent swarm "work[] together" to simultaneously share and distribute copyrighted files. (Am. Compl. ¶¶ 28-30)  Despite the alleged interactivity and interdependence of each swarm member, though, Malibu Media decided to dismiss every other member of Doe 13's alleged swarm – removing, by its own logic, all of the alleged parties integral to the BitTorrent swarm (Dkt. No. 23).

Malibu is further estopped from arguing that joinder is suddenly not proper simply because it is being forced to actually litigate. '[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). Judicial estoppel can be applied when a party asserts a certain position in a legal proceeding and prevails, only to assert a contrary position later on because of changed interests." *Rosenberg v. Vuotto*, 2010 U.S. Dist. LEXIS 114283 (D. Pa. 2010).

Based on Malibu's representations as to the nature of a swarm, it is at least illogical, if not impossible, for Malibu to scale the swarm size up or down based upon its preference for which defendants it seeks to take to trial and to eliminate the initial seeder for untold reasons. Malibu alleges that "all of the peers and seeders" work together to create a swarm.  Yet Malibu now claims its works were infringed by defendants and adds more allegedly infringed works and one-member swarms allegedly distributing dozens of additional films.  It would seem that as additional films are added to the complaint, the number of swarm members and defendants would increase – not decrease – and at least one initial seeder would be part of the case.  Far from "all" of the peers and seeders in the swarm are named as defendants in this action (Am. Compl. ¶¶ 28-30).  In fact, since Doe 13 is the only defendant accused of sharing the particular

files X-Art Siterips #1, #2, and #14, then Malibu has indeed scaled this down to a "swarm of one" with neither initial seeder nor recipients – creating a logical impossibility.

It is worth noting that IPP, Ltd. the firm retained by Malibu in this matter, was formed under the laws of Germany and is a successor to the German company formerly known as Guardaley.  Baumgarten Brandt, a German law firm who retained Guardaley for similar purposes, filed a suit against Guardaley alleging it was aware of serious flaws in their collection systems but chose not to disclose them.  In its appeal to an injunction brought by Guardaley, Baumgarten successfully asserted that, among other things, Guardaley operated a "honeypot" scheme. This means Gurdaley was the initial seeder in some cases.  **Exhibit F.**  Here, there is good cause to believe that ITT, Ltd. or one of its agents or affiliates may be the initial seeder of some or all of the Works at issue. Malibu must identify the initial seeder before this lawsuit can move forward.  If the initial seeder is indeed Malibu's agent, then something more serious than dismissal should be at hand.

For Malibu to bring suit against a swarm for the purposes of far-reaching early discovery, only to pare the swarm down to a swarm of one not only undermines its swarm theory of liability, but it puts Defendant in the unjust position of being held liable for the acts of an entire swarm, when its members were allegedly indispensable parts of the infringement at the outset of this litigation (Compl. ¶¶ 10, 29-34).  This is compounded by the fact that there very well may have been members of the same swarm, who have already settled in other actions across the country, or who are presently in settlement discussions with the Plaintiff.[28]

Without the participation of the initial seeder and other swarm members in this action, Malibu cannot have full and complete relief and Doe 13 cannot possibly mount an effective defense.  It would mean that Doe 13 would be charged with participating in a swarm, when not even the initial seeder has been named, nor has a recipient of the files.  Malibu has claims against those defendants, their rights and liabilities are instrumental to this litigation, and they have a strong interest in its outcome irrespective of whether they claim to be or not. *Chadwick*, 656 F.

---

[28]     Defendant has received information that Malibu continues to seek settlement from members of the swarm that it allegedly could not serve.

Supp. at 862 (holding that where unjoined parties' rights may be affected by pending litigation, their joinder is necessary).  Malibu's failure to join an initial seeder, and its dismissal of several Does from this action undermines the economizing purpose of Rule 19, and leads to inconsistent rulings and judgments.  *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557 (M.D. Pa. 1982) (holding that the goal of Rule 19 is "to protect the interests of the parties by affording complete adjudication of the dispute. Judicial economy is aided by avoiding repeated lawsuits concerning the same subject matter").

As contemplated by *Chadwick* and *Whyham*, joinder of the absent parties in this case would increase judicial economy and reduce the likelihood of inconsistent judgments.  Malibu Media possesses the information necessary to name and serve these defendants in a separate action which may result in a distinctly different outcome (Dkt. No. 30).  Simultaneously, Malibu Media's failure to join the additional Does is prejudicial to Doe #13 because if the initial seeder committed no infringement,[29] then Doe 13 could not have either.   Further, any judgment obtained would be joint and several as to the whole swarm - not just an individual.  Finally, there can be no infringement under the Plaintiff's theories unless the defendant actually transmitted the works to third parties (Am. Compl. ¶¶ 26-31).  If Doe 13 was the terminal member of the swarm, then what liability could he have?

Moreover, Malibu may have already been made whole for the swarm-led infringements in this case by alleged members of the same swarm in jurisdictions outside of Pennsylvania. The maximum damages in this case are $150,000 per **work**, not per **Defendant**. 17 USC § 504(C)(1); *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 313, 316 (S.D.N.Y. 2011) ("Congress intended for the Copyright Act to treat jointly and severally liable infringers the same way that the statute treats individually liable infringers. For any individually liable infringer, a plaintiff is entitled to one statutory damage award per work. For any two or more jointly and severally liable infringers, a plaintiff is entitled to one statutory damage award per work"); *see also Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 294 (9th Cir. 1997) ("[W]hen statutory damages are assessed against one defendant or a group of defendants held to be jointly

---

[29]     Especially if the initial seeder was Malibu or one of its agents.

23

and severally liable, each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work.")  Because of the factual issues presented by Malibu Media's right to recovery – or lack thereof, depending on the source and amount of Plaintiff's prior recovery for infringements of these works – Defendant's potential liability (and Malibu's right to recovery) cannot be assessed without all of the swarm members being joined in the litigation.

Malibu has already recovered significant funds in connection with the infringements alleged in the Amended Complaint.   Malibu filed Notices of Voluntarily Dismissal with Prejudice against Does #6 and #19 before this action was set for a bellwether. (Dkt. Nos. 16 and 17).  Presumably, this was because Malibu received adequate settlements from these defendants. In fact, Malibu may have received doubly-adequate settlements from them – in which case Malibu is now triple-dipping by seeking damages that have already been satisfied by third parties Malibu intentionally kept out of this litigation.

Because the swarm is global in scope, and the Plaintiff has likely already been made whole by other undisclosed swarm members, nothing short of full disclosure and setoff would allow Doe #13 to evaluate Plaintiff's ability to bring this action that it repeatedly claims to be based on the uploading and downloading the exact same file.   Since the Plaintiff seeks statutory damages, if the Plaintiff has already collected the statutory maximum for this work from other defendants, then the Plaintiff must stop visiting the well.

Fundamental fairness and judicial economy compel Malibu to either try its case against the initial seeder and swarm in full or face dismissal of its claim.  If Malibu wishes to file mass joinder actions alleging a swarm theory as a basis for joinder of the defendants, it should also try these cases in the same manner.  The fact is, without an initial seeder, and without a swarm, there is no infringement.  Malibu's reticence to keep its defendants joined in this action when it faces trial, despite alleging that joinder is necessary in order to obtain early discovery, is wildly inconsistent:  Malibu Media argued that its defendants are properly joined as an interlocking phalanx of alleged infringers.  It should be estopped from now claiming otherwise.

**C.     Paragraph 53 Demonstrates that Malibu disobeyed this Court's order, and Malibu should show cause as to why it should not be sanctioned.  Further, the Paragraph Should Be Struck Under Fed. R. Civ. 12(f) Because It Is Immaterial, Impertinent, and Scandalous**

Plaintiff alleges in ¶53 of the Amended Complaint:

IPP Limited informed Plaintiff that John Doe 13 infringed, IPP Limited's other customer, Nucorp, Ltd.'s unregistered copyrights in the works set forth on Exhibit F of those dates and time set forth on Exhibit F. Plaintiff is not suing for infringement of these works, but said infringements are additional evidence that John Doe 13 was willfully infringing on Plaintiff's Works.

Under Fed. R. Civ. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Nucorp, Ltd. is not a party to this action or any other action against Doe #13, and this allegation is scandalous and impertinent. Furthermore, set forth in more detail below, adding allegation also violated two court orders forbidding Malibu from abusing its subpoena power for purposes outside of what was alleged in the Complaint. Accordingly, Paragraph 53 and Exhibit "F" of the Amended Complaint should be struck .

**D.     Paragraph 53 of the Amended Complaint and The Additional Works Alleged in the Exhibit D Violate this Honorable Court's May 18, 2012 and October 3, 2012 Orders. Malibu Should Be Ordered To Show Cause Why It Should Not Be Sanctioned.**

On May May 18, 2012, this Honorable Court granted Plaintiff's motion for leave to serve subpoenas on third party ISPs. When it did, the court expressly limited Malibu's use of the subpoena power, holding that:

Plaintiff may use the information disclosed in response to a Rule 45 subpoena **solely for the purpose of protecting Plaintiffs rights as set forth in its Complaint**.

(Emphasis added, Dkt. No. 8)

On October 3, 2012, this Honorable Court reiterated its directive:

The Motions to Proceed Anonymously and/or for a Protective Order are GRANTED. The parties shall redact or otherwise protect the identities of the John

25

Doe defendants in any filings with the Court. **The results of discovery may only be used for purposes of this case**. (Emphasis added, Dkt. No. 20)

When the above Orders were entered, "this case" constituted twenty-two Pennsylvania John Doe defendants accused of sharing "Tiffany - Sex With a Supermodel" with each other between December 2011 and March 2012. (Complaint, Ex. A).

However, on November 2, 2012, Malibu amended its Complaint to accuse Doe #13 of sharing X-Art Siterip #1, X-Art Siterip #2, X-Art #14, Girls Night Out, Anneli Menage Trois, and Fucking Perfection. (Amended Complaint, Ex. D). Malibu also included additional allegations involving NuCorp, which is apparently a customer of IPP, Ltd.

Malibu's Amended Complaint demonstrates a clear violation of both of the court's Orders limiting its use of subpoena power.The Court  unequivocally ordered Malibu to use the results of discovery for "this case ... as set forth in the Complaint" which at the time of the is an infringement claim against twenty-two Pennsylvania Does allegedly sharing "Tiffany - Sex With a Supermodel."   The additional Works and allegations concerning Nucorp were not contemplated in the Court's May 18 2012 and October 3, 2012 Orders --in fact, such abuse of the subpoena powers was specifically prohibited. Malibu has, at its whim, decided to turn this litigation into a new case by adding the additional Works, and in doing so violated two court orders.

Thus, it is appropriate for this court to issue an Order to Show cause as to why Malibu should not be sanctioned for these transgressions. *Franklin Mint, Co. v. Boyd*, Case No. 99-03823 *2000 WL 1716758* at *4 (E.D. Pa. Nov. 17, 2000) (issuing order to show cause for contempt when litigant disobeyed the court's lawful order).

## III.   Conclusion.

Plaintiff's Amended Complaint contains numerous fatal and potentially fatal flaws that prohibit it from proceeding.  Plaintiff has amended it suit to dismiss members of various BitTorrent swarms, which it originally alleged were inseparable masses of infringement, and instead join three individuals from three separate swarms as the defendants in this action.  By

Plaintiff's own logic, the other members of these swarms – who apparently are known to Plaintiff and absent only due to Plaintiff's failure to timely serve them – are indispensable parties to the litigation.   Thus, these absent swarm members must be joined or the action dismissed. Otherwise, both Defendant and the other Does absent from this action may face inconsistent judgments before numerous courts, and such a discrepancy may result in Plaintiff achieving a double or triple recovery in what should be one consolidated action.

Plaintiff faces still other barriers to sustaining this action.  Plaintiff lacks both exclusive rights in the copyrights underlying this litigation and the right to bring accrued causes of action for the infringement of these works.

Accordingly, Doe #13 respectfully requests this Honorable Court to enter the above Proposed Order, along with other relief the court deems necessary, just, and proper.  Defendant Doe #13 also respectfully requests that the Court consider the merits of any other motions for dismissal filed by other defendants in this action, insofar as they also pertain to Doe #13.

Dated: November 20, 2012

Respectfully Submitted,

  *s/A. Jordan Rushie*

A. Jordan Rushie, PA Bar #209066
Mulvihill & Rushie LLC
2424 East York Street, Suite 316
Philadelphia, PA 19125
215-385-5291
Jordan@FishtownLaw.com

Marc J. Randazza, Esq.
(*pro hac vice* pending, licensed in AZ, CA, FL, MA, NV)
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
702-757-1001
305-437-7662 (fax)
rlgall@randazza.com