# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALIBU MEDIA, LLC,  a California limited
liability company,

     Plaintiff,

v.

JOHN DOES 1, 13 and 14,

     Defendants.

CASE NUMBER: 5:12-cv-02088-MMB

Honorable Michael M. Baylson

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE 13'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(7) AND MOTION TO STRIKE PARAGRAPH 53 OF PLAINTIFF'S AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(f) [CM/ECF NO. 55]**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................3

II.     FACTS ...................................................................................................................6

      A.      The Fields Created Plaintiff's Business ....................................................6

      B.      Malibu Media Owns Its Copyrights ...........................................................7

      C.      Malibu Media Wants the Infringement to Stop ..........................................8

      D.      John Doe 13 Stole 30 of Plaintiff's Movies Over Five Months ................9

      E.      Opposing Counsel Has Filed Numerous BitTorrent Suits Including Suits Against Individuals ........................................................................................10

      F.      Defendant Infringed Eighteen Movies That Were Properly Registered by Malibu Media ..........................................................................................11

III.    LEGAL STANDARD ........................................................................................11

IV.     ARGUMENT .....................................................................................................12

      A.      Defendant Lacks Standing to Challenge Plaintiff's Assignment as a Third Party Infringer ..........................................................................................12

      B.      Plaintiff Is the Exclusive Owner of the Copyrights ................................14

      C.      Defendant's Cases Miss the Mark ...........................................................16

      D.      The Right to Sue for Past Infringements Is Irrelevant ............................17

      E.      BitTorrent Peers Are Not Necessary Parties Under Rule 19(a) ..............18

            1.      Defendant's Fantasy of An Implied License Defense Does Not Make the Initial Seed A Necessary Party ......................................19

            2.      Opposing Counsel Sues BitTorrent Defendants Individually ........20

            3.      Judicial Estoppel Does Not Apply Because Plaintiff is Not Asserting Inconsistent Positions ..............................................................21

            4.      Defendant Misinterprets the Statutory Damages Provisions of 17 U.S.C. § 504 ................................................................................21

      F.      Malibu Media Did Not Violate the Court's Order and the Court Should Not Strike Paragraph 53 of the Amended Complaint ....................................21

V.      CONCLUSION ..................................................................................................23

**TABLE OF AUTHORITIES**

*Basketball Mktg. Co., Inc. v. Steve & Barry's Univ. Sportswear*, CIV.A. 07-716, 2008 WL 5586141 (E.D. Pa. 2008)...........................................................................................................13

*Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591-93 (7th Cir. 2003)..............................13, 18

*Dick Corp. v. SNC-Lavalin Constructors, Inc.*, 2004 Copr. L. Dec. P 28912 (N.D. Ill. 2004)...........16

*Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F. 3d 197, 206 (3d Cir. 2002) .........................................................................................................................................9

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) .................13, 18

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353(1998)............................................22

*HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 384 (7th Cir. 2011) ....................................16

*Interscope Records v. Duty*2006 WL 988086, *2 (D. AZ 2006)..........................................................19

*Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 317-18 (S.D.N.Y. 1996) ...........................13, 18

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) ..............15, 18

*Liberty Media Holding, LLC v. Tabora*, 11-CV-651-IEG JMA, 2012 WL 28788 (S.D. Cal. 2012)...11

*Liberty Media Holdings v. Bean*, 2:12-cv-00646-LDG –GWF (D. Nev. April 17, 2012)..................11

*Liberty Media Holdings v. Cottle*, 2:12-cv-00868-KJM-EFB (E.D. Cal. April 4, 2012) ...................11

*Liberty Media Holdings v. John Doe*, 5:12-cv-00593-VAP-OP (C.D. Cal. April 19, 2012)..............11

*Liberty Media Holdings v. Olsen*, 2:12-at-00440 (E.D. Cal. April 4, 2012).......................................11

*Liberty Media Holdings v. Ryan Fraga,* 1:11-cv-11789-WGY (D. Mass. Oct. 9, 2011) ....................11

*Liberty Media Holdings, LLC v. John Does 1-265*, 2:12-cv-04703-ER, (E.D. Pa. Aug. 17, 2012) ....11

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) .............................................................12

*Meinman v. Kenton County, Ky.*, 2011 WL 721478, FN9 (E.D. Ky. 2011) ........................................12

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004 ............................................................18

*Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F.Supp.2d 1131, 1142 (N.D.Okla.2001).19

*National Wildlife Federation v. Agricultural Stabilization and Conservation Service*, 901 F.2d 673, 677 (8th Cir. 1990) ............................................................................................................12

*Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle*, 356 F. Supp. 2d 515, 523 (E.D. Pa. 2005) ..15

*Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir.2003) ..........................................................12

*Patchen v. McGuire*, CIV.A. 11-5388, 2012 WL 4473233 (E.D. Pa. 2012)........................................17

*Relational Design & Tech., Inc. v. Brock*, CIV. A. 91-2452-EEO, 1993 WL 191323 (D. Kan. 1993) ...........................................................................................................................................16

*Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1272 (D. Colo. 2011) ..............................................17

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1145 (9th Cir. 2008)..................................16

*Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 6, 7-8, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990)........19

*TIG Ins. v. Nobel Learning Communities, Inc.,* 2002 WL 1340332 (E.D. Pa. 2002).........................18

*Twentieth Century Fox Film Corp. v. iCraveTV*, 2000 WL 255989, * 6 (W.D. Pa. 2000) ................18

*United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416-17 (1973) ....................................12

*Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) ............................12

*Whitmore v. Arkansas,* 495 U.S. 149, 154-155 (1990) .......................................................................12

## I.   <u>INTRODUCTION</u>

Each of John Doe 13's arguments is baseless and unsupported by the law and facts. Accordingly, the Court should deny Defendant's motion.

John Doe 13's first argument challenges Malibu Media, LLC's ("Malibu Media") assignment.  The premise upon which this argument is founded is set forth in the first sentence of his motion, and it is plainly false.  Specifically, John Doe 13 erroneously asserts that "Malibu Media, LLC came into existence on February 8, 2011, [and] almost immediately thereafter, [] filed a tsunami of lawsuits alleging infringement of copyrighted works that it did not create."  To wit: the owners of Malibu Media operated their business as an unincorporated partnership for years before organizing Plaintiff as a limited liability company, and Malibu Media did not file its first suit until nearly a year after it was organized as a limited liability company.  Moreover, Malibu Media's copyrighted works *were* created by Malibu Media's co-owner, Brigham Field, who prior to founding Malibu Media was a professional photograph.  In short, John Doe 13's factual assertions are hatched from thin air and are demonstrably false.

As for the legal merits of Defendant's assignment argument, as numerous courts throughout the country – including this Court – have held, John Doe 13 does not have standing to challenge Plaintiff's assignment because the parties to the subject assignment, Malibu Media, and Brigham Field, do not contest it.  Moreover, this Court has also held that assignments just like the one that Plaintiff used do transfer *all* of the exclusive rights.   Finally, Defendant's claim that Plaintiff's assignment did not include the right to sue for past infringement is simply not relevant; Malibu Media owned the copyrights long before Defendant infringed it.

John Doe 13's second argument is that each of the peers in a BitTorrent swarm is an indispensable party.  First, John Doe 13 filed a motion to sever [CM/ECF # 9], wherein John Doe 13 disingenuously argued that he should be sued individually.  Now, that John Doe 13 got

*exactly* what he asked for, his argument that he should be sued in connection with everyone else in the swarm, and that the "swarm of one theory is without precedent" should fall on deaf ears. Memorandum of Law in Support of Motion to Dismiss, CM/ECF # 55, p. 3.   Second, adverse counsel represents Liberty Media in identical BitTorrent infringement cases and Liberty Media has proceeded against John Doe Defendants individually.  Just like this suit, all those suits filed by Liberty Media against individual BitTorrent infringers are proper.  What is not proper is the subject matter conflict adverse counsel has making the frivolous argument that suing people individually is not proper.  Indeed, Supreme Court precedent, the advisory committee notes to Rule 11, basic black letter tort law, and decisional authority directly on point make *crystal* clear the other peers in a swarm are *not* necessary parties within the meaning of Rule 19.  Nor is Plaintiff judicially estopped from suing Defendant individually.  Indeed, Plaintiff never argued it was improper to sue people individually.  Instead, Plaintiff merely argued it is also proper to sue people in joined suits.  These two legal positions are entirely consistent.  Finally, Defendant's arguments regarding statutory damages are wholly without merit because: (1) the Court has not yet awarded any statutory damages; and (2) the copyright act clearly contemplates the award of statutory damages for infringement of the same work in multiple suits.

John Doe 13's third argument is spuriously absurd.  According to Defendant, this Court's orders prohibit Plaintiff from bringing all of its claims for copyright infringement against Defendant.  This Court never entered any such order; nor should it because any such order would violate the principal underlying Rule 18 which encourages a Plaintiff to bring all of its claims against a defendant in one action.

Finally, it is important to note that Defendant repeatedly attempts to bolster his motion through *ad homonym* attacks.  Not only are the attacks terribly insulting, the attacks are particularly disingenuous coming from adverse counsel.  Indeed, adverse counsel has filed suit

against over 10,000 people – for bittorrent copyright infringement[1]. And, adverse counsel stated on national television "[t]here is no other business that I can think of where everybody would say 'It's just fine to steal from them.' [So], why is it ok, because my client makes adult entertainment, to steal from them?"[2] It is not ok for people to steal adverse counsel's client's works; and, it is not ok for people to steal undersigned counsel's client's works. To slander Plaintiff for suing infringers persecutes the victim and turns equity on its head. For goodness sake, John Doe 13 repetitively stole 30 movies over five months. Plaintiff is more than justified in suing him for his tortious conduct.

For these reasons, as more fully explained below, the Court should deny John Doe 13's motion to dismiss.

## II.    FACTS

### A.    The Fields Created Plaintiff's Business

Colette Pelissier Field, with her husband Brigham Field, began their business from scratch. Field Declaration at ¶ 3 (Exhibit A). Ms. Field was a real estate agent and Mr. Field was a photographer. *Id*. at ¶ 4. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 5. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*. Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies

---

[1] See CNBC'S "Hollywood Robbery" in which Defense counsel Marc Randazza was interviewed regarding his bittorrent copyright infringement suits representing Plaintiff Corbin Fisher. Available at http://www.youtube.com/watch?v=gtxkrcCPp38
[2] Id.

with high production value and a cinematic quality. *Id.* at ¶ 8. They created an Internet website called X-Art.com. *Id.* at ¶ 9.

**B.    Malibu Media Owns Its Copyrights**

Like many small businesses, at first, the Fields operated as an unincorporated partnership. *Id.* at ¶ 10. In due course, however, the Fields formed Malibu Media, their media production and distribution company, and contributed Mr. Fields Copyrights to it. *Id.*

Mr. Field authored and produced the videos while the Fields were an unincorporated partnership. *Id.* at ¶ 11. Upon founding the company on February 8, 2011, the Fields discussed with each other and agreed that the copyrights would be transferred to Malibu Media. *Id.* at ¶ 12. The Fields intended for the transfer of rights to cover every single right associated with a copyright; including the exclusive right to sue for past, present, and future infringement. *Id.* at ¶ 12. They also intended for the unincorporated entity to cease to exist. *Id.* at ¶ 12.

All copyrighted works created by Mr. Field were transferred through a written assignment of copyright to Malibu Media. *Id.* at ¶ 13. Mr. Field's current arrangement with the company is that the movies he creates are works made for hire and owned by the company. *Id.* at ¶ 14. Unfortunately, the company's attorney was mistakenly told to register some works as "works made for hire" and authored by Malibu Media despite these works being authored by Mr. Field prior to formation of the LLC and being subsequently assigned to the company. *Id.* at ¶ 15. The Fields instructed their attorneys to correct the registration and counsel for Malibu Media filed a Form CA, which is used for "C"orrecting and "A"mplifying a registration. With that Form, they also filed the assignment. *Id.* at ¶ 16. Since that time, the assignment has been supplemented to clarify that the plenary rights granted to Malibu Media, LLC via the use of the words "all rights, title and interests, in and to the copyrights" was intended to include the right to sue for past, present, and future infringement, which the Fields had always assumed was

impliedly included from the start, and to make clear that the Effective Date is February 8, 2011. *Id*. at ¶ 17.  *See also* Exhibit B.

No other person or entity, other than Malibu Media, has or can claim to have an ownership interest in the copyrights.  *Id*. at ¶ 18.  Indeed, the Fields are currently and always have been the sole owners of Malibu Media, and its predecessor, their partnership.  *Id*. at ¶ 19.

### C.   __Malibu Media Wants the Infringement to Stop__

Malibu Media's customers can pay it a monthly recurring subscription fee of $19.95, or an annual subscription fee of $99.95 to access its entire library of HD Video content.  *Id*. at ¶ 20. Internet subscription sales are and have always been by *far* Malibu Media's primary source of revenue.  *Id*. at ¶ 21.  As Malibu Media's business has grown its production value has also grown.  *Id*. at ¶ 22.  It spends millions of dollars a year to produce its content and run its website.  *Id.*  Currently, it has tens of thousands of members, but it is finding it hard to grow and maintain the memberships because so many people are finding its films for free.  *Id*. at ¶ 23.  The Fields have worked hard and invested millions of dollars in their business in order to produce the best quality product.  *Id*. at ¶ 24.

For the first 3 years (when x-art.com was not as popular) the Fields did not have as many issues with piracy.  *Id*. at ¶ 25.  Now, that Malibu Media's videos are highly desirable, more people steal the videos than pay for a subscription.  *Id*.  Malibu Media is even getting many complaints from its members (asking why they should pay when Plaintiff's videos are available for free on the torrents).  *Id*. at ¶ 26.  The Fields firmly believe that they must protect Malibu Media's copyrights in order for it to survive and grow.  *Id*. at ¶ 27.  The Fields have gone over their options many times and concluded that the only way they can protect their business and their ability to sell subscriptions is to sue infringers.  *Id*. at ¶ 29.  The Fields do not want to cause financial hardship to anyone, however they do want to deter infringement and be compensated

for the intentional theft of Malibu Media's videos.  *Id.* at ¶ 30.

Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.  *Id.* at ¶ 33.  Despite sending thousands of DMCA notices per week, the infringement continues.  *Id.* at ¶ 34.  And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.  *Id.*  Malibu Media has *never* authorized anyone to put its works on a torrent website.  *Id.* at ¶ 35.

Malibu Media does not seek to use the Court system to profit from the infringement like some have suggested.  *Id.* at ¶ 37.  As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business.  *Id.*  Malibu Media wants the infringement to stop.  Accordingly, the purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.  *Id.*

### D.   John Doe 13 Stole 30 of Plaintiff's Movies Over Five Months

"To establish a claim of copyright infringement, a plaintiff must establish : (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F. 3d 197, 206 (3d Cir. 2002).  Plaintiff pled a prima facie case of infringement.  "Plaintiff is the owner of those United States Copyright Registrations attached hereto as Composite Exhibit A.  Each registration covers a copyrighted work which was infringed by Defendant." Complaint at ¶ 10.  "Each Defendant installed a BitTorrent Client onto his computer." *Id.* at ¶ 13.  "Each Defendant went to a torrent site to upload and download those of Plaintiffs' Works identified in the Count directed to each Defendant." *Id.* at ¶ 25.  "Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent Protocol and the internet to

reproduce, distribute, display or perform Plaintiffs' copyrighted works." *Id.* at ¶ 32. "IPP used forensic software . . . and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions." *Id.* at ¶ 33. "IPP extracted the resulting data . . . reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith . . ." *Id.* at ¶ 34. "The IP addresses, Unique Hash Number and hit dates . . . accurately reflect . . . and show each Defendant had copied a piece of Plaintiff's copyrighted Work(s)." *Id.* at ¶ 35. "Plaintiff is the owner of the Registrations for the Works identified on Exhibit D, each of which contains an original work of authorship.  The titles of the registered Work contained in siterips 1, 2, and 14 are set forth on Exhibit G." *Id.* at ¶ 48. "By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the registered Works on Exhibits D and F that are original." *Id.* at ¶ 49. "Plaintiff did not authorize, permit or consent to Defendant's copying of its Works." *Id.* at ¶ 50. "As a result of the foregoing, Defendant violated Plaintiff's exclusive [copy]right[s]." *Id.* at ¶ 51. "In addition to infringing Plaintiff's Works, IPP Limited informed Plaintiff that John Doe 13 infringed, IPP Limited's other customer, Nucorp, Ltd.'s, unregistered copyrights in the works set forth on Exhibit F on those dates and time set forth on Exhibit F.  Plaintiff is not suing for infringement of these works, but said infringements are additional evidence that John Doe 13 was willfully infringing on Plaintiff's Works." *Id.* at ¶ 53.

### E.   Opposing Counsel Has Filed Numerous BitTorrent Suits Including Suits Against Individuals

As stated above, opposing counsel Marc Randazza has sued over 10,000 people for BitTorrent copyright infringement.  As an example of his more recent cases *see Liberty Media Holdings v. Cottle*, 2:12-cv-00868-KJM-EFB (E.D. Cal. April 4, 2012); *Liberty Media Holdings v. Olsen*, 2:12-at-00440 (E.D. Cal. April 4, 2012); *Liberty Media Holdings v. Bean*, 2:12-cv-

00646-LDG –GWF (D. Nev. April 17, 2012); *Liberty Media Holdings v. John Doe*, 5:12-cv-00593-VAP-OP (C.D. Cal. April 19, 2012); *Liberty Media Holding, LLC v. Tabora*, 11-CV-651-IEG JMA, 2012 WL 28788 (S.D. Cal. 2012).  Upon information and belief, through local counsel, opposing counsel filed additional cases against individual defendants. *See* e.g. *Liberty Media Holdings v. Ryan Fraga,* 1:11-cv-11789-WGY (D. Mass. Oct. 9, 2011).  Additionally, less than four months ago opposing counsel Jordan Rushie, on behalf of Liberty Media Holdings, LLC had a Court of Common Pleas of Philadelphia, Pennsylvania case removed to this district. *See Liberty Media Holdings, LLC v. John Does 1-265*, 2:12-cv-04703-ER, (E.D. Pa. Aug. 17, 2012).

     **F.**    **Defendant Infringed Eighteen Movies That Were Properly Registered by Malibu Media**

Defendant infringed 30 of Malibu Media's copyrighted works over a time period of five months.  Defendant's arguments as to Plaintiff's standing only apply to 12 of the infringements. Defendant's arguments are inapplicable to 18 of the movies he infringed because the movies were created after the date of Malibu Media's formation and therefore not subject to the copyright registration error or the recorded assignment.

**III.**    **LEGAL STANDARD**

"Article III . . . gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process."  *Whitmore v. Arkansas,* 495 U.S. 149, 154-155 (1990).  Under Supreme Court precedent, to establish standing, a plaintiff need only establish: (1) an injury, (2) which was caused by the Defendant, (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

In evaluating a motion to dismiss for alleged lack of standing, courts "do not review the facts to see if [plaintiffs] have proven their allegations."  *National Wildlife Federation v. Agricultural Stabilization and Conservation Service*, 901 F.2d 673, 677 (8th Cir. 1990).  Instead, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Id., quoting Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).  "[U]nless [Plaintiff's] allegations are incapable of proof at trial, [the Court] must accept them as true."  *Id., citing United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416-17 (1973).

Further, "[i]n reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."  *Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003).  Rule 12(d), limiting a court's analysis to the allegations set forth in the complaint, "[b]y its [express] terms, [] applies only to Rule 12(b)(6) and Rule 12(c) motions – not to Rule 12(b)(1)…[.]" *Meinman v. Kenton County, Ky.*, 2011 WL 721478, at *10 n.9 (E.D. Ky. 2011).

## IV.   ARGUMENT

### A.   Defendant Lacks Standing to Challenge Plaintiff's Assignment as a Third Party Infringer

Each of Defendant's arguments regarding Plaintiff's standing to sue Defendant challenges the sufficiency of Plaintiff's assignment.  However, Defendant, as a third party infringer, lacks standing to challenge Plaintiff's assignment.  To explain, 17 U.S.C. § 204(a) requires copyright assignments and licenses to be in writing.  And, when there is no dispute between the parties transferring copyrights, "the cases are legion holding that a third-party

infringer lacks standing to invoke § 204." *Rottlund Co., Inc. v. Pinnacle Corp.*, CIV.01-1980 DSD/SRN, 2004 WL 1879983 (D. Minn. 2004) (citing a list of cases holding the same.)  This makes sense because "writing requirements are designed to prevent against fraudulent claims by plaintiffs and are not intended to be invoked by defendants." *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 318 (S.D.N.Y. 1996).  *See also, Basketball Mktg. Co., Inc. v. Steve & Barry's Univ. Sportswear*, CIV.A. 07-716, 2008 WL 5586141 (E.D. Pa. 2008) ("it would be anomalous to permit a third party infringer to invoke [17 U.S.C. § 204(a)] against the licensee" where "the copyright holder appears to have no dispute with its licensee on the matter.");  *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) (same).  *Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 592-93 (7th Cir. 2003) (when "there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'")

*Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 592-93 (7th Cir. 2003) is factually identical and right on point.  In *Billy-Bob,* a defendant infringer challenged plaintiff's standing to sue on the basis that (1) the copyrights were mistakenly registered as a work for hire before the company existed and (2) the assignment agreement, after an oral transfer, was not valid.  *Id.* at 592.  The author of copyrights in Billy-Bob, like here, was one of Billy-Bob Teeth's owners.  It is the exact same case.  Under these facts, the Seventh Circuit explained that the Section 204(a) is tantamount to a statute of frauds and that a third party infringer cannot challenge an assignment:

> The statute is in the nature of a statute of frauds and is designed to resolve disputes among copyright owners and transferees. As the court said in Imperial Residential Design, "the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or

copyright ownership." The court went on to say that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement."

*Id.* at 592-593.  Here, there is no dispute between the author Brigham Field and the copyright owner, Malibu Media.   Under these circumstances, John Doe 13 does *not* have standing to contest the assignment or challenge Plaintiff's standing to sue John Doe 13 for infringing its copyright.

The assignment issue is really quite silly.  Malibu Media owns the copyrights.  All Malibu Media did was erroneously indicate that it owns the copyrights through a work made for hire agreement instead of indicating that it owns the copyrights through an assignment.  Plaintiff has since submitted a form CA, and the innocent error will be corrected as a matter of routine procedure by the Copyright Office.  *See* 37 C.F.R. § 201.7

## B. <u>Plaintiff Is the Exclusive Owner of the Copyrights</u>

Defendant erroneously contends that Plaintiff lacks standing because Plaintiff's assignment fails to include non-existent requirements such as the word "exclusive," a description of how Brigham Field acquired his rights, and a list of each individual enumerated right in Section 106 of the Copyright Act.  First, none of these requirements exist under the law.  Second, this argument could not possibly go anywhere because as set forth in *Billy-Bob*, Plaintiff can amend the assignment at any time, including during trial.  Third, the assignment included the word "all" to describe the rights being transferred.

It has long been settled that "no magic words must be included in a document to satisfy § 204(a). Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright."  *Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle*, 356 F. Supp. 2d 515, 523 (E.D. Pa. 2005) *aff'd,* 184 Fed. Appx. 270 (3d Cir. 2006).  Plaintiff's assignment clearly states,

"all of Assignor's right, title and interest in and to the copyrights."   There are no limits or conditions in the assignment, nor is there any intent or implication that anything but ALL right, title, and interest were assigned.   Since, Mr. Field sold, assigned, transferred, conveyed, and delivered ALL of his rights to the copyrights, there is no question that the intent was for the assignment to be exclusive.   Defendant's attempt to cause a rift between Brigham Field and Malibu Media on this point is absurd.   As the Ninth Circuit held in a case involving the issue of who owns what copyrights, "since JJV was Gasper, JJV intended whatever Gasper intended, and if Gasper intended [X] there was no one to disagree."   *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010).

Numerous courts throughout the country – including this Court - have held that language similar to Plaintiffs is sufficient to support a transfer of ownership.   *See Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle*, 356 F. Supp. 2d 515, 523 (E.D. Pa. 2005) aff'd, 184 Fed. Appx. 270 (3d Cir. 2006) ("If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Carta; a one-line pro forma statement will do."); *Relational Design & Tech., Inc. v. Brock*, CIV. A. 91-2452-EEO, 1993 WL 191323 (D. Kan. 1993) ("The original contract … stated that DTC would own 'all rights to the completed program with no licensing or royalties fees due.' Thus, all rights in the program (including the copyright) were transferred to DTC upon delivery of the completed program by RDT."); *Dick Corp. v. SNC-Lavalin Constructors, Inc.*, 2004 Copr. L. Dec. P 28912 (N.D. Ill. 2004) ("The writing may be sufficient to transfer a copyright if it uses terminology and language that clearly includes copyrights").

**C.    Defendant's Cases Miss the Mark**

Defendant cites *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1145 (9th Cir. 2008) to support his argument that Malibu Media's assignment is improper.  *See* Def's Mot. 9. To the contrary, the *Sybersound* opinion clearly states it would have held Malibu Media's assignment is sufficient.  To explain, TVT was a co-owner of certain copyrights and assigned its right to exploit the copyright for karoke use to Sybersound:

> Sybersound contends that it stepped into TVT's shoes and became a co-owner in the karaoke-use interest of the copyright when it became the "exclusive assignee and licensee of TVT Music Publishing's copyrighted interests for purposes of karaoke use, and also exclusive assignee of the right to sue to enforce the assigned copyright interests, for both present and past infringements in karaoke exploitation" pursuant to an assignment agreement with TVT.

*Id. at* 1145.  The Ninth Circuit held that if TVT was the *only* owner of the copyrights, it could have assigned this right to Sybersound and Sybersound would have standing.  *Id.* at 1146.  Here, Brigham was the only owner of the copyrights it assigned to Malibu Media.  Accordingly, *Sybersound* supports Plaintiff's position – not – Defendant's position.    Defendant's citation to *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 384 (7th Cir. 2011) is also off point.  In *HyperQuest*, the licenses contained limitations and restrictions on rights, and the copyright owner maintained significant control over the copyright.  *Id.* at 385.  That is simply not the case here.

Defendant's reliance on *Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1272 (D. Colo. 2011) is also misplaced.  The only right assigned to *Righthaven* was the right to sue:

> The Copyright Assignment Agreement defines "Recovery" as "any and all sums ... arising from an Infringement Action."    Thus, when read together, the Assignment and the Copyright Assignment Agreement reveal that MediaNews Group has assigned to Righthaven the bare right to sue for infringement—no more, no less.

*Id.* at 1273.    *Righthaven,* a well-known case and stands solely for the proposition that an assignment cannot separate the right to enforce a right from the right to exercise one of the exclusive rights set forth in 17 U.S.C. § 106.  No such separation of the rights has occurred here.  Accordingly, *Righthaven* is simply not applicable.  Similarly, *Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881, 884 (9th Cir.2005) is not applicable because, here, Plaintiff has been assigned all rights in the copyrighted films – not just the right to sue.

Finally, Defendant's citation to *Patchen v. McGuire*, CIV.A. 11-5388, 2012 WL 4473233 (E.D. Pa. 2012) undermines Defendant's argument.  In *Patchen*, the Honorable Judge Yohn, found that the plaintiff could not bring a claim for infringement because she had transferred her rights to the defendant.  If this case supports any proposition applicable to this case, it is that Malibu Media is the proper party not Mr. Field who transferred his rights to Plaintiff.

### D.    The Right to Sue for Past Infringements Is Irrelevant

Plaintiff obtained the copyrights to its movies in February of 2011, long before the Defendants infringed its works.  Therefore, whether Plaintiff's assignment contained the right to sue for past infringements is *not* relevant.  Further, Mr. Field clearly intended to assign all of his rights, including the right to sue for past infringement; and, at least three circuit courts have found the memorialization of oral assignments to be proper when the rights are being assigned by the author to his company.  *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) ("the 'note or memorandum of the transfer' need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement";) *Jules Jordan Video, Inc. v. 144942*

*Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (the transfer document can be written after the oral transfer). Further, courts have held that a Plaintiff may assign this right up and until the commencement of trial. *See Infodek, Inc. v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614, 620 (N.D. Ga. 1993) ("[E]ven when the claim is not assigned until after the action is instituted, the assignee is the real party in interest and can maintain the action"); *Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 317-18 (S.D.N.Y. 1996). Accordingly, if there was some technical deficiency with the assignment, which there is not, Plaintiff could correct it now.

### E.    BitTorrent Peers Are Not Necessary Parties Under Rule 19(a)

BitTorrent Peers are not necessary parties under Rule 19. To explain, "copyright [infringement] is a strict liability tort." 5 Patry on Copyright § 17:167. *See also*, *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) ("Copyright infringement is a . . . tort"); *TIG Ins. v. Nobel Learning Communities, Inc.,* 2002 WL 1340332 (E.D. Pa. 2002) ("tort of copyright infringement."); *Twentieth Century Fox Film Corp. v. iCraveTV*, 2000 WL 255989, * 6 (W.D. Pa. 2000) ("copyright infringement is a strict liability tort.") Here, Plaintiff alleged Defendant directly infringed Plaintiff's copyright by: (a) downloading a complete copy of Plaintiffs' works from other peers via BitTorrent; and (b) distributing pieces of Plaintiffs' works to other peers (as evidenced by its distribution of a piece to IPP, Ltd.) If Plaintiff proves its case, Defendant is individually liable for this direct infringement. Plaintiff could have pled that John Doe 13 was contributorily liable for the direct infringement of the other members' of the BitTorrent swarm direct infringement. Plaintiff did not do so because omitting that count makes the case simpler and this Court stayed Plaintiff's claims against the other Defendants. Further, by the time the Bellwether trial is over, hundreds of thousands of more people will have infringed Plaintiff's copyrights and Plaintiff will move on to those new infringers.

Even if Plaintiff had pled Defendant was contributorily liable for the infringement of the other peer members and therefore jointly liable for the other peers' infringement, it is well settled black letter, tort law that joint tortfeasors are *not* necessary parties.   *See Temple v. Synthes Corp.*, Ltd. 498 U.S. 5, 6 (1990) ("It has long been the law that it is not necessary for all joint tortfeasors to be named in a single lawsuit. . . . The Advisory Committee Notes to Rule 19(a) explicitly state that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." 28 U.S.C.App., p. 595.") This rule has been applied in copyright cases.  *See e.g., Interscope Records v. Duty* 2006 WL 988086, *2 (D. AZ 2006) ("Duty also argues that the alleged infringement would not have been possible without the use of Kazaa [a peer to peer file sharing service], and therefore the owner of Kazaa, Sharman Networks, Ltd. ("Sharman"), is a necessary and indispensable party to this suit. We disagree. . . .," citing, *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7-8, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990); *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F.Supp.2d 1131, 1142 (N.D.Okla.2001) ("It is a well-settled rule that a joint tortfeasor is not a necessary party under Rule 19(a) to an action against another party with similar liability. A tortfeasor considered to have 'joint and several' liability is simply a permissive party to an action against another with like liability. Because a co-tortfeasor is simply allowable but not necessary for a copyright violation, they are by nature also not indispensable parties.")

## 1.   **Defendant's Fantasy of An Implied License Defense Does Not Make the Initial Seed A Necessary Party**

Defendant asserts that the initial seeder "may have [ ] had [a] license to distribute the works." *Def.'s Mot.* pp. 19, 21.   Factually, this is pure fantasy and wishful thinking. Nevertheless, an implied license is a defense.  It does not make a joint tortfeasor a necessary party.  If any such license existed, and it does not, Plaintiff would provide it in discovery.  That

being said, Plaintiff has already sworn under that it "*never* authorized anyone to put its works on a torrent website," and if this defense gets raised Plaintiff will move for summary judgment on it. Field Declaration at ¶ 35.

### 2.    Opposing Counsel Sues BitTorrent Defendants Individually

As set forth in the facts, opposing counsel has personally filed numerous identical suits against *individual* BitTorrent infringers.  Accordingly, he knows that it is unnecessary to join the initial seeder.  Arguing to the contrary here reeks of hypocrisy and bad faith.  Further, adverse counsel may still be representing copyright owners in BitTorrent infringement cases.  If so, adverse counsel's argument violates Rule 1.7 of the ABA Model Rules governing conflict of interests which states: "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."

Here, if opposing counsel were to succeed in erroneously convincing this Court that Plaintiff needed to sue an entire swarm and could not proceed individually against a Defendant then any such holding would undermine, weaken and impede those of opposing counsel's other client's who are copyright owner's rights.  As this case progresses, opposing counsel are likely to run into more-and-more instances where their copyright owning clients interests are adverse to Defendant's interests.  This is called a "subject matter conflict."  And, the existence of "subject matter conflicts" is well known to intellectual property lawyers; indeed, there is a lot of case law on it.  Here, the Court should inquire about Defense counsel's potential conflict, and if necessary, compel defense counsel to either cease representing copyright owners in BitTorrent infringement suits or to cease representing this defendant.

### 3. Judicial Estoppel Does Not Apply Because Plaintiff is Not Asserting Inconsistent Positions

Defendant asserts Plaintiff should be "estopped from arguing that joinder is suddenly not proper." Def.'s Mot. p. 21. Plaintiff is not doing so. Joinder is absolutely "proper" under Rule 20 (permissive joinder). Plaintiff has never argued, however, that joinder is "necessary" under Rule 19. In short, it is not inconsistent to argue suing defendants individually is proper while at the same time arguing that suing them in a joined suit is proper. The reality is that suing both ways is proper.

### 4. Defendant Misinterprets the Statutory Damages Provisions of 17 U.S.C. § 504

Defendant erroneously argues "if the Plaintiff has already collected the statutory maximum for this work from other defendants, then the Plaintiff must stop visiting the well." *Def.'s Mot.* pp.23-24. 17 U.S.C. § 504(c) states that there is maximum statutory damages per work, per case:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally . . . as the court considers just.

*Id.* This "action" has not gone to trial. Obviously, therefore, Plaintiff has not been "award[ed]" any "statutory damages." "The right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353(1998) (emphasis in original and internal citation omitted). Moreover, no jury has ever awarded Malibu Media *any* statutory damages, period.

### F. Malibu Media Did Not Violate the Court's Order and the Court Should Not Strike Paragraph 53 of the Amended Complaint

This Court should reject Defendant's argument that Paragraph 53 of the Amended Complaint and the additional works alleged in Exhibit D should be dismissed or stricken. With regard to the additional works sued upon in the Amended Complaint, the claims for these works were asserted pursuant to Rule 18's authorization for the joinder of multiple claims against Defendant. *See* Fed. R. Civ. P. 18 ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.") Defendant's objection to the addition of these additional claims—far from a procedural one—is truly a transparent attempt to avoid liability for the 29 additional infringements discovered by Plaintiff. This Court's order state Plaintiff can only use Defendant's identity for purposes of "protecting Plaintiff's rights as set forth in its Complaint" [CM/ECF No. 8] and, this Court later loosed the restriction so that Plaintiff could use the Defendant's identities "for purposes of this case" [CM/ECF No. 20]

First, Plaintiff is clearly only using the Doe Defendants' identities for the purpose of "this case." Second, Plaintiff is using the additional infringements for purposes of proving Defendant committed the infringement alleged in the original "complaint." Indeed, if the evidence demonstrates Defendant repetitively infringed, it is more likely that he infringed on the date and time Plaintiff alleged in the original complaint. Finally, the obvious purpose of these orders was to prohibit Plaintiff from using the Doe Defendants' identities for reasons unrelated to protecting Plaintiff's copyrights. Plaintiff is not doing so. And, Plaintiff simply finds it incredible to believe that this Court's order was intended to alter Rule 18 or frustrate Plaintiff's ability to prosecute its claims against Defendant.

With regard to Paragraph 53 and Exhibit F to the Amended Complaint, far from constituting "redundant, immaterial, impertinent, or scandalous matter," Plaintiff's allegations are highly relevant to proving a pattern and practice of infringement by Defendant. Fed. R. Civ.

P. 12(f).   Specifically, Plaintiff alleges that Defendant has also infringed numerous titles belonging to another customer of Plaintiff's investigator over a span of time from November 2011 to January 2012.   Amended Complaint, ¶ 53 and Exhibit F.   Thus, while Plaintiff is not suing upon these infringements, it is indisputable that these allegations, which will be supported by evidence, are highly relevant to support Plaintiff's claims.   Indeed, the more evidence Plaintiff can proffer at trial that Defendant is a BitTorrent infringer, the better Plaintiff's case will be.   Accordingly, Plaintiff's allegations should not be stricken.

**V.     CONCLUSION**

For the foregoing reasons Plaintiff respectfully requests the Court deny Defendant's motion to dismiss and strike.

DATED this 5th day of December, 2012

Respectfully submitted,

FIORE & BARBER, LLC

By:      /s/ Christopher P. Fiore
         Christopher P. Fiore, Esquire
         Aman M. Barber, III, Esquire
         Attorneys for Plaintiff
         425 Main Street, Suite 200
         Harleysville, PA 19438
         Tel:  (215) 256-0205
         Fax:  (215) 256-9205
         Email:  cfiore@fiorebarber.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ Christopher P. Fiore
